Good morning, Your Honor. Stephen Wax, federal defender for Mr. Westfall. This case involves four distinct challenges to the adequacy of Oregon's indigent defense appellate system. First, whether or not the statutory exhaustion requirement should be waived, and independent of that, whether the failings in the Oregon system, which we believe should cause the waiver of exhaustion, independently constitute violations of Mr. Westfall's rights under the Due Process Clause, the Equal Protection Clause, and his right to the effective assistance of counsel. Given the filings by the state and Mr. Westfall this week, it seems that it might be reasonable to start with the question of what effect, if any, the decision of the Oregon Court of Appeals on the underlying appeal has on this proceeding. We believe the answer to that question is found in the footnote 2 in the Code Decision. There, this Court referred, I think, with favor to the Second Circuit's decision in Simmons and Mathis, and noted that the Second Circuit had found that the decision by a State Court of Appeals would not render a claim such as this moot. The Simmons case, which is the second one. I think, Your Honor, that the question of exhaustion as a separate basis to allow this Court to get to the merits of the underlying substantive challenges remains a question that we have to address. It remains alive and is not moot because, as we indicated in our filing, it is our view that the recent events in the Oregon Court of Appeals underscore the ineffectiveness of the state corrective process as reflected by the order of the Oregon Court of Appeals in March to the state public defender, file this brief within a month or we're going to dismiss. State public defender files a brief, which we submit is inadequate and incomplete, raising one issue only. Well, you've seen that we have briefed four distinct claims in this Court, and I have a difficult time understanding why all claims are not raised in the brief filed in the state system. So I think that the exhaustion claim is also not mooted. It seems to me that the discussion of the Second Circuit in Simmons on the question of what should the federal court do when it is confronted with a state system that is broken, even if during the pendency of the federal case the state system ultimately issues some decision on the case, is directly on point and is not decided in code, but I think properly noted in code, and that it should become the law of this Court. Well, Simmons, I should say, at least from my part, and I think from my colleagues, that we were not aware of any of this until this morning, which is troublesome. So I am going to ask questions that may sound as if I don't know very much about this, and that's because I don't. Is Simmons – was Simmons an exhaustion case or only a due process case? In other words, was the – you point out that Coe cites Simmons. Yes. And it talks about due process. Does it deal with the exhaustion issue? Simmons was dealing with the due process delay claim and held that the due process delay claim was not moved. Correct. And I do not believe – But it's an issue that we were discussing now, i.e., the ineffectiveness of the remedy for exhaustion purposes. Simmons is not directly on point, nor is Coe. Am I right about that? Correct. I do not believe there is any direct precedent on that – on the exhaustion question and whether or not that is mooted by a decision of the state court. I believe, however, that the analysis that was undertaken by the Second Circuit in Simmons is equally applicable to a due process claim, an equal protection claim, an ineffective assistance claim, and the question of waiver of exhaustion. I don't see any basis for disagreeing. Excuse me, Your Honor. There is a prior claim here that the Public Defender's Office should do more work for the amount of time it can handle, and therefore that's why the system, under your view, is broken. Or is it the fact that you feel that the Oregon court system is not proceeding rapidly enough, and therefore we ought to be clear about what's going on there to be unconstitutional? We have raised both issues, Your Honor. We argued in the district court, presented evidence in the district court, and the district court found that the Oregon indigent appellate defense system is underfunded, understaffed, and incapable of expeditiously and effectively resolving the cases that are assigned to it. In addition, in the district court, we presented evidence that the Oregon Court of Appeals has, I think we would best say informally, although it comes out in writing in all of their orders, allowed a different standard and followed a different standard for the scheduling of briefs. The State Public Defender is not held to the 49-day rule. They continually extend the deadlines. And the briefing by the Attorney General in the public defender cases extends, I think the record was, up to 150 days perhaps. And here they actually wrote a brief in a week or two or something like that. Yes, Your Honor. And I would submit that perhaps the dependency of this appeal, as reflected in the pleadings that were submitted in the supplemental filing by the Attorney General, and then our reply to that this week, and I apologize that it only came in this week, shows that they were telling the Oregon Court of Appeals about the dependency of this case. Highly unusual for them to file a brief within 12 days of receipt of appellant's brief. Unheard. What about the State Public Defender's time in here? Was that unusual or not unusual? In other words, the fact that it took as long as it did, and that they were in the brink of default, I guess. I believe, Your Honor, that that is entirely consistent with the evidence that we presented in the district court. The primary evidence came from the head of the State Public Defender Office. His affidavit is in the excerpt of record. And then we could not get a second affidavit from him in time to submit to the district court. Instead, you have the affidavit of my chief investigator, who spoke with the State Public Defender and rebutted many of the statements that were presented by the State in the district court. Let's assume that there's something live about this case. What would you, what remedy would you, and let's assume that we thought that there was exhaustion, at least exhaustion. Then what? First of all, you've raised several state law causes of action, which kind of mystified me. I mean, if we were to reach the merits of anything, I presume we couldn't reach the merits of state causes of action, could we? I believe you can, Your Honor. And I believe that the distinction that Coe drew between waiver of exhaustion under the statute and an independent due process claim means that this court can find that the state system is broken. Therefore, there is no corrective process. And the language of 2254B2, you know, B applies. We waive exhaustion. And when you waive exhaustion, all the claims that we present are. But still, on 2254, we can only reach federal constitutional claims, no? In the brief, we are arguing that the denial of the continuance constitutes both a. . . Well, I understand that. But. . . I'm sorry. As it is a state law claim, because you set them out as the separate causes of action, we couldn't do that. No. You would have to reach it as the violation of the federal constitutional right, the state's failure to follow its own law in not granting the speedy trial dismissal. So those things fall out. Then next, now that there has been a state court of appeal decision. Yes. One possible approach to either the exhaustion or the due process issue, which is to say do something in 60 days or we're going to reach the merits, falls out. Is that right? That would be. . . That would not give us any relief. Okay. The relief that I believe that you can grant and that we would urge you to consider. First, you can order dismissal and discharge. Now, I recognize that the discussion in most of the cases points out that that is an extreme remedy. It is, however, a remedy that this Court can consider. What has been, to this date, the total elapsed time from the filing of the appeal? The sentence was imposed in July of 2001. The notice of appeal was filed in, I'm sorry, I'm not recalling whether it was August or September. We're still at under two years total. Yes. Only because of the extraordinary action taken by the state in response to the pendency of this proceeding. And as Your Honor may recall, this is the second time I have been before this Court. I believe you were on the first panel with this issue with Mr. Westphal, although this is on a separate conviction. The second remedy that we believe remains available to us, one is dismiss and or discharge, order him discharged from custody because of the violation of his right to due process or to the effective assistance of counsel or to equal protection. Second, we believe that you could distinction between the representation provided by people who are assigned counsel as opposed to those who can retain counsel. Because of giving the greater extensions. And by failing to adequately fund the state public defender system. The state has created a classification based on wealth. And in the Harris Trilogy from Oklahoma, we have pointed out that they considered the failings in the state appellate system under all three constitutional provisions. And we think that that discussion is equally applicable here because of the funding issues. It's a wealth-based classification, and I think we're entitled to relief. The other remedy that this Court could grant would be to grant the writ and order discharge within 60 days unless the state provides a meaningful appeal. And it would be on that question that I submit the material that the Court has recently received about the events in the state system would be most relevant. How could we possibly tell with no further proceedings that the brief that was filed was which was scanned was filed that way because of the timing issues or because that was the best judgment of the lawyer when he finally got to the case? If that is the Court's view, then a remand to the district court to determine those questions, it seems to me, would be in order. It seems to me that this Court could rule on the constitutional issues that we have presented and remand to the district court for consideration of the appropriate remedy. And in the district court, we would then have the opportunity to fully litigate that issue if this Court believes that's necessary. But that issue would also be relevant to the merits of the ineffective corrective process issue, right? Because you now seem to be hanging in part on the theory that the part of the ineffectiveness was that the when the PD got to the case, he didn't have enough time to work on it, which may be true and may not be true. You're using what was actually in the brief as evidence that even when they did the appeal, they were impacted by the financing and they didn't do an effective appeal. Yes, Your Honor. We have in very short form, because I don't think that it is a complex issue, shown that Mr. Westphal, for example, filed the demand for a speedy trial. The affidavit of service is there. The timing is clear. He files it in October. And the 30, excuse me, the 90 days ran in January. This case is, you know, his motion to dismiss is filed in February. On its face, I submit that issue is there. The continuance issue, again, on its face, it's there. He made the discovery request. It's all in the excerpt of record. He said, I need the records from the state hospital system to make out my defense. His notice of intent to rely on an insanity defense was there. The lawyer is saying, I've been trying to get this expert. I can't get the expert in, in time, and I can't have the expert do a meaningful job unless I have the records that the state has in its possession that it's not giving me. So I submit there is enough in this record on which this court can make a finding. If what you're deciding is the due process claim under the Barker standards, where you would need to find prejudice. On the ineffective assistance claim, if the underfunding and understaffing effectively denies Mr. Westfall any meaningful counsel, we don't need to show prejudice. And we've argued that in the brief that Cronick says we don't need to. And, again, referring back to the Harris Trilogy from Oklahoma, that's what the court found there. One last question, and then you're five minutes over, so I think we will stop. The, where are we in terms of how far Mr. Westfall is into a second sentence, the relevant sentence? I believe when I filed the brief, I noted that he was approximately six months into it, so he is more than halfway through now, up to two-thirds. Thank you. Thank you. May it please the Court, Tim Sylvester for the appellee in this case. The fact that the Court of Appeals, Oregon Court of Appeals has already decided this case moves this case in two respects. Is there a reason why we weren't held until Monday? Well, I, well, what had happened was is that the Court of Appeals had decided the case in the end of May, and then Petitioner had filed a petition for reconsideration. As you can see, I filed a motion to strike. And what I was waiting for was for the Court of Appeals to make a ruling on the motion to strike. We prepare for cases. Yes, I realize that. But Petitioner knew as well. Well, I, I didn't, I didn't know that.    This is a motion. I don't know when a extremely relevant something is. And frankly, I still don't have your motion because I was here. I don't physically have it. I don't think Judge Hook has it. We have the response to it. We don't have the motion. I filed it last week. It was filed on the seventh, I gather. Pardon me? That's Monday. Well, I had mailed it in last week. I'm sorry. Just for your information, I mean, I don't know if Judge Goodwin has it. I've been instructed in the past. It was received in San Francisco on the eighth. This is the other one. This is Waxman's. But we don't have his motion. We don't have it. I apologize to the Court. I've been told in the past, if the case is set for argument, we still have to do the filing in San Francisco. And I, I, I apologize for asking. Anyway, just for your information, none of us have seen the motion. Okay. We've seen Mr. Waxman's response to it. The only, the motion itself is not a motion to dismiss or anything of that nature. It's simply a motion for this Court to take judicial notice of the events that have occurred in the Court of Appeals. And I checked this morning, and the Court of Appeals still has not ruled on my motion to strike. But the fact of the matter is, is that the Oregon Court of Appeals has, this case has already been submitted on the briefs, in the Oregon Court of Appeals, and Oregon Court of Appeals has decided it. And I think that that moots this case in two respects. First, this whole claim here is that my failure to exhaust should be excused. Well, now he is exhausted. Well, he hasn't exhausted. He still has to go to the State Supreme Court. Yes, he still has to go to the State Supreme Court. But once the State Supreme, once that particular step is taken, then he has exhausted and he can simply refile his petition in the, if he wants to forego, post-conviction remedy that's available to him. And I don't understand that he has ever made any argument about the adequacy of the available post-conviction remedy. His challenge here has been, is to the adequacy of the State direct appeal mechanism. Now, as I understand, too, his claim is that the, primarily is that the State public defender takes too long, and that the State takes too long to file its response, and then it takes too long for the Oregon Court of Appeals to make, to file its decision. Now, in this case, he filed this, he filed his petition in this case just days after he filed his petition. But his prediction of how long it would take, at least through the State PD, was a pretty good one. Well, no, it wasn't. He went and said it was going to take two years for the system, for the appeal to go through. And presumably, if he hadn't filed this piece of paper, it probably would have. It came pretty close. Well, I'm not sure that that's true or not. The fact of the matter, though, is that the, there was about a six-month delay here in the filing of the transcript. I don't understand that he's ever made any argument, he didn't object to the delay in the filing of the transcript. He's never made any argument here about that there is any sort of inordinate delay in the general course of things in the Oregon appellate courts in filing transcripts. From the time the transcript was filed, there was a, it took 13 months for the case to work its way through the Oregon Court of Appeals. By contrast here, after the notice of appeal was filed in this case, it took six months for Mr. Wax to file his appellant's brief. It took me six weeks to file my respondent's brief. And then it took six months for this case to get here. So the amount of time that it takes. It's a six-week period that you filed your brief, and is that typical? For me, it is. By the fact that this case was pending? No. Oh, in the Oregon Court of Appeals or in this case? The Oregon Court of Appeals. To be honest, I normally, I file a lot of my briefs without extension. In fact, I file almost all of my briefs without extension. That's the way I do my job. Now, that's not true for most of the lawyers in the office. I'll confess to that. Now, it is true, though, that because this case was pending in this court, yes, I took it, I took notice of that, and I filed my brief quickly. Because there's a 58-page transcript, and there is nothing, there is nothing in that case. He raised one claim of error. It was a state law, denial of motion for continuance, that has no merit. He did not raise any of his other claims. And the reason he didn't, with all due respect to Mr. Wax, is that none of those claims have any colorable legal merit. And that his appellate attorney made the determination, which is his job, that he was going to present the one case, the one claim of error that he saw. Well, how can we tell that, given the fact that the, it appears that the state PD was really not ready to file the brief or file it because they had this last extension thing? And it's possible, quite possible that what you're saying is absolutely true. And the other possibility is that he had 75 other things to do, and he decided to file a minimal brief. I mean, we don't know. Well, there is a mechanism under state law for the determination of that very issue, and that's a state post-conviction issue. As soon as he's finished exhausting his direct appeal remedy, which should be in the next month or so, he could go and file a petition for post-conviction relief in the Oregon Circuit Court, and he could say that my appellate counsel provided inadequate assistance by failing to raise these claims of error. Speedy trial. And all the other claims. I mean, I guess the ultimate question is this. This case may have had a problem. Mr. Westphal's last case had a problem. This case could have moved out. But there is a systemic problem out there. And if every, as I understand it, I don't know if it's a bad enough systemic problem to merit exhaustion waivers or due process or anything like that, but it's certainly taking a long time, nigh on to two years often, and in this case, to get through the first level of the Oregon appellate process. Are we ever going to see a case in which we can deal with that, or is everybody who tries to take it on going to end up getting a faster resolution than other people, and it's just going to keep going on like that? Well, I'll answer your question this way. One of my major complaints about Petitioner's argument is he's coming into the federal courts and he's saying the state courts are trampling on my federal constitutional rights because they are not processing my appeal quickly enough. And he comes into this court and he says, I'm entitled to quicker treatment than anybody else because I am prejudiced, because I'm serving this kind of sentence, because I've got mental problems. And not once has he asked the Oregon courts for any sort of expedited review. Not once has he gone into the Oregon courts and said, I have a due process right to have this case tried more quickly. Not once has he objected when his counsel filed a motion for extension of time. Not once has he asked for expedited briefing. Not once has he asked for expedited argument. I had to do that. I had to go in in response to his complaints and say, okay, fine. You're complaining about it. I will file the brief quickly. I will ask for expedited argument. And that's what I did. I don't think it's fair for Petitioner to come into the federal courts and complain about the way the state courts are handling their job and saying that the state courts are trampling on his constitutional rights when he has never asked the state courts for any affirmative relief and he has never complained in any way to the state courts. And so to answer your question, perhaps if those defendants who are bothered by the length of time that it is taking in their process make a complaint to the Oregon Court of Appeals, perhaps the Oregon Court of Appeals will do something about it. Perhaps the State Attorney General's Office will do something about it. If those people who have some sort of colorable claim of saying that this is taking too long and I have some sort of reason under the due process clause for expedited consideration of my appeal, well, maybe I'll consider it, maybe I'll file a faster brief, and maybe your problem will go away. In this case, the amount of time between the settling of the transcript and the decision in the Oregon Court of Appeals was 13 months. And I don't even think under any of the cases that Mr. Wax has cited, 13 months is unusual. It's been 13 months that this case has been pending before this Court, and I don't understand him to be arguing this Court is depriving him of due process. Unless the Court has, and I guess I just want to make one point, and that is that Mr. Wax is trying to turn this into a systematic, a systemic challenge to the Oregon appellate court system. But the only issue that really is before this Court is whether this particular petitioner in this particular case is entitled to have his exhaustion, his failure to exhaust, waived. And given the fact that there was only a one-year delay in this case, in fact, and given the fact that he has now exhausted his case all the way through the Oregon Court of Appeals, I think this particular case is moot, and this Court really has no authority to go further with that issue. Unless the Court has questions, that's all I have. Thank you very much. Mr. Wax. Thank you, Your Honor. Mr. Westphal. Give me a couple minutes. Thank you. The record shows that Mr. Westphal, in 2000, wrote to the State Public Defender Office, did complain about the manner in which that office operated, and was told, you're out of luck, get yourself a lawyer, hire yourself a lawyer if you want anything done differently. Those letters are in the excerpt of the record. Second, State says, make him complain to the State system. They missed the entire point of all of the decisions that are cited. Coe, Harris, Simmons, all of them say, when the State system is broke, you don't have to do that. And that's the point of the exhaustion portion of the statute, and that's the point of the doctrine of due process delay, equal protection delay, or ineffective assistance delay. Third, we are not trying to turn this into a systemic case. It is because the Barker factors, which this Court said in Coe are to be applied, include the reason for the delay. The reason for the delay, as found by the district court in this case, based on the evidence that we presented in the district court, is the fact that the State system is broken. We're not trying to do anything with Mr. Westphal except use the law that this Court has set out. As we look at Mr. Westphal's situation, he still had the remainder of his prior sentence to serve. He had the eight months to be served, and at the time that the original petition was filed, which was right after the conviction, he still had some of the 20 months to be served. But certainly he had eight months of the prior sentence to be served, so that looking at his situation, the delay didn't cause an unusual delay for him, did it? Well, there's a difference, I believe, between the length of time that he has to serve in prison and the length of time that he has to wait to have his appeal resolved. This is a relatively short sentence, and he was serving a different sentence when this one was imposed. The really hard problem here is at what point, what criteria we would use to determine whether this case falls on one side or the other side of a line of either ineffectiveness for exhaustion purposes or due process. We have, depending how you look at it, 13 months or 21 or 22 months of delay until the first court of appeals decision. We have a situation where he was serving a short sentence, but he didn't run out of sentence while the appeal was pending. So what criteria would we use? How could we tell whether this was a situation that fell on one side or the other side of the line? I believe, Your Honor, that the criteria were those that were presented to the district court and found by the district court. We showed that the ---- But she did a Barker analysis, and she didn't do what you seem to agree is a separate analysis and seems to be a separate analysis with regard to the exhaustion issue. I believe it is a separate analysis. My read of the opinion is that she may have used the Barker analysis in finding that exhaustion should be waived. I think there has been some confusion in the law about whether ---- Correct. But it seems to me that the standard that this Court should use is that that is discussed in and set out in Harris and Simmons and Koh. In Harris ---- Harris went to this rule of thumb thing for two years as, I guess, an answer to the amorphousness. Yes. Is that what we should do? Would you lose if we did that, actually? Well, on this particular case, because, as you pointed out ---- well, whether or not you pointed out, as the facts show, the State moved unusually rapidly, as did the public defender, because of the tendency of this proceeding. That's true, but it's the only case we've got. We don't have another case. But you have the finding of the district court and the facts that were presented in the district court that says that the Oregon system is, in fact, underfunded, understaffed, and the proof was that the cases from the State public defender almost never are resolved in less than two years. And in the record, you'll see ---- So it was. So under Harris, you wouldn't get any relief if they applied the Harris rule. And that's, unfortunately, where the new events in the system perhaps caused the relief to be to find the defect, to remand to the district court for consideration of remedy. It seems to me that that is probably a reasonable place for me to end. Thank you very much. Thank you. Thank both of you.
judges: Goodwin, Hug, Berzon